## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RADIADYNE HOLDCO, INC.** | § | |
| **and JOHN ISHAM AS** | § | |
| **SELLERS' REPRESENTATIVE,** | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | **CIVIL ACTION NO: 4:20-cv-01316** |
| **VS.** | § | |
| | § | |
| **ANGIODYNAMICS, INC.** | § | |
| | § | |
| *Defendant* | § | |

### PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs RadiaDyne Holdco, Inc. and John Isham, in his capacity as Sellers' Representative, file this Second Amended Complaint against Defendant AngioDynamics, Inc., and respectfully state as follows:

### PARTIES

1.    RadiaDyne Holdco, Inc. ("RadiaDyne Holdco") is a Texas corporation with its principal place of business in Houston, Harris County, Texas.

2.    John Isham, in his capacity as Sellers' Representative ("Sellers' Representative"), is an individual currently residing in Davidson County, Tennessee.

3.    AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business in Latham, New York.  AngioDynamics has already appeared in this matter through its counsel of record.

### JURISDICTION AND VENUE

4.    This Court has original, subject matter jurisdiction over this civil action under 28 U.S.C. § 1332(a) because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) there is complete diversity of citizenship between Plaintiffs and AngioDynamics.  The

Court has personal jurisdiction over AngioDynamics because Plaintiffs' cause of action arises from or is directly related to AngioDynamics' contacts with Texas, as described herein. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because AngioDynamics is subject to personal jurisdiction in this District with respect to this lawsuit.

<u>BACKGROUND FACTS</u>

6.      Prior to the transaction at issue in this lawsuit, RadiaDyne, L.L.C. ("RadiaDyne") was a closely held, Texas company in the business of designing, developing, manufacturing, marketing, selling, and distributing radiation dose monitoring products and other related immobilization medical balloon devices.  These products and devices provided a safer and more targeted delivery of radiation treatment to cancer patients.  RadiaDyne was a recognized brand within radiation oncology.  It was considered a market leader for its legacy balloon immobilization devices for prostate and cervical cancers.  In addition, through years of design and development, RadiaDyne's emerging product, the OARtrac platform, was a first of its kind, real-time patient monitoring system that physically measured radiation dose inside the cancer patient at the point of radiation delivery and provided treatment data to the physician.

7.      AngioDynamics is a publicly-traded corporation and represents itself as a "leading provider of innovative medical devices" for use in diagnosis and treatment of cancer and peripheral vascular disease.

**A.      Origin and Terms of the Agreement**

8.      Around February of 2018, AngioDynamics approached RadiaDyne and Sellers' Representative to gauge their interest in selling RadiaDyne's technology, products, and intellectual

property to AngioDynamics.  At the time, RadiaDyne and Sellers' Representative had not engaged a representative to assist with selling the company, nor were they actively attempting to sell the company.  Alternatively at that time, RadiaDyne and Sellers' Representative were in the process of evaluating growth equity capital options.

9.     AngioDynamics sold itself to RadiaDyne and Sellers' Representative as being well positioned to add strategic value to their products' success in the marketplace by leveraging its scale and distribution infrastructure, including but not limited to its management, marketing, sales, engineering, and regulatory teams.  AngioDynamics further represented it has distinguished itself through its consistent ability to successfully develop and bring to market new technologies and products in the oncology space.  AngioDynamics specifically expressed its intention to develop and grow the RadiaDyne products to new levels for the mutual benefit of both companies and their stakeholders.  Based on these representations, RadiaDyne and Sellers' Representative engaged in negotiations with AngioDynamics rather than exercising other financial options, such as partnering with a venture capital firm for growth equity investment opportunities.

10.     On September 12, 2018, AngioDynamics, RadiaDyne, RadiaDyne Holdco, and Sellers' Representative entered into a Membership Interest Purchase Agreement (the "Agreement").[1]  Under the Agreement, AngioDynamics purchased all membership interests of RadiaDyne.  More specifically, the purchase was facilitated by RadiaDyne Holdco acquiring all of RadiaDyne's membership interests under a "Company Reorganization" protocol prior to closing.  Subject to additional terms and conditions in the Agreement, AngioDynamics then purchased RadiaDyne's membership interests directly from RadiaDyne Holdco.

11.     In return consideration, Sections 2.2 and 2.3 of the Agreement generally required AngioDynamics to pay RadiaDyne Holdco an "Initial Purchase Price" at the "Closing Date" of

---

[1]     The Agreement states it is governed by the laws of the State of Delaware.

September 21, 2018. The Initial Purchase Price included an initial cash payment, plus payments on certain technical milestones and working capital overage/underage costs, less certain seller transaction expenses, as well as a "Holdback Amount" owed at a later date.  The Holdback Amount included both a $250,000.00 "Purchase Price Holdback Amount" and a $5,000,000.00 "Indemnification Holdback Amount."

12.    The Agreement also required AngioDynamics to pay post-closing an "Aggregate Purchase Price" consisting of the Initial Purchase Price, plus any contingent earn out payments for sales milestones and technical milestones met following the Closing Date.

**B.    AngioDynamics' Failure to Pay the Indemnification Holdback Amount**

13.    On September 21, 2018, AngioDynamics paid the Initial Purchase Price amount immediately owed to RadiaDyne Holdco, including one of the technical milestones identified in the Agreement.  In 2019, AngioDynamics paid RadiaDyne Holdco $3 million related to meeting or accomplishing a separate technical milestone number 4 (FDA Approval of OARtrac Electron microPSD) identified in section 2.6 of the Agreement.  AngioDynamics paid all closing and post-closing funds *via* wire transfer to RadiaDyne Holdco's bank account at a Wells Fargo branch located in Harris County, Texas.

14.    As it pertains to the Holdback Amount, AngioDynamics also paid at closing the $250,000 Purchase Price Holdback Amount, but did not pay the $5 million Indemnification Holdback Amount.  Section 11.9(b) of the Agreement required AngioDynamics to distribute the Indemnification Holdback Amount to Sellers' Representative at the end of the "Holdback Period."  The Agreement expressly states as follows:

> (b)    <u>Termination of Indemnification Holdback Amount</u>.  At the conclusion of the Holdback Period, any portion of the Indemnification Holdback Amount remaining, if any, shall be distributed to Sellers' Representative; <u>provided</u>, <u>however</u>, that no distribution shall be made with respect to such cash as may be necessary in the good faith judgment of Buyer to satisfy any unsatisfied claims under <u>Article VIII</u> or this <u>Article XI</u> made prior to the termination of the Holdback Period.

The Agreement defined the "Holdback Period" as "the period of time from the Closing Date through and including the date that is the eighteen (18) month anniversary of the Closing Date." As stated, the Closing Date of the Agreement was September 21, 2018. Accordingly, the $5 million Indemnification Holdback Amount was owed to Sellers' Representative on March 21, 2020.

15.     AngioDynamics did not pay the $5 million Indemnification Holdback Amount when due, and has thereafter repudiated and ignored its obligation to pay the vast majority of the Indemnification Holdback Amount. There is no legal basis nor justification for AngioDynamics to withhold this payment from Plaintiffs. On March 20, 2020—just one day before the Indemnification Holdback was due—AngioDynamics sent a baseless "indemnification claim notice" to Plaintiffs in which AngioDynamics refused to pay the entire Indemnification Holdback Amount. This notice, sent approximately eighteen (18) months after the transaction, was the first communication of any sort in which AngioDynamics voiced a concern over the transaction or the products and technology it acquired. In fact, AngioDynamics reported to its investors and to the public after the transaction that it was seemingly satisfied with the RadiaDyne products and technology it had acquired.

16.     To date, AngioDynamics has only paid a $375,000 "Deductible" associated with the Indemnification Holdback Amount.[2] Accordingly, the balance owed on the Indemnification Holdback Amount is $4,625,000.

17.     Plaintiffs now sue to recover the remaining $4,625,000 of the Indemnification Holdback Amount owed by AngioDynamics, plus fees, costs, interest, and all other relief associated with recovering the Indemnification Holdback Amount.

---

[2]     The Deductible was only recently paid on September 10, 2020, well after the March 21, 2020 payment deadline for all amounts owed under the Indemnification Holdback Amount. Despite this partial payment, Plaintiffs hereby continue to seek herein all damages and losses available for the late payment of the Deductible, including but not limited to the costs, interest, and fees incurred.

C.      **AngioDynamics' Failure to Pay the Milestones**

18.      In addition to the Indemnification Holdback Amount, Sections 2.5 and 2.6 of the Agreement require AngioDynamics to pay, as part of the Aggregate Purchase Price: (a) certain contingent earn out payments based on aggregate net sales of the RadiaDyne products and technology sold to AngioDynamics (the "Sales Milestone"), and (b) certain payments for technical milestones relating to the RadiaDyne products and technology sold to AngioDynamics ("Technical Milestone") (collectively, the "Milestones").

19.      The Sales Milestone calls for up to $30 million in earn-out payments to RadiaDyne Holdco.  More specifically, at aggregate net sales intervals of $50 million, $100 million, and $150 million milestones, RadiaDyne Holdco is owed $10 million at each milestone interval from AngioDynamics.  No portion of the $30 million Sales Milestone has been paid by AngioDynamics.

20.      The Technical Milestones are based on the achievement of FDA market clearances for the products and technology sold to AngioDynamics.  As certain milestone events occur, payment is owed to RadiaDyne Holdco.  Collectively, the Technical Milestone payments total $10 million. AngioDynamics currently owes $4 million for the Technical Milestones.

21.      Importantly, the Agreement required AngioDynamics to conduct its operations with "commercially reasonable efforts" in advancing the technology and products sold to AngioDynamics, as defined below:

> (f)      For purposes of Section 2.6(e), "commercially reasonable efforts" shall mean those efforts and resources normally used by Buyer for a product owned by it or to which it has rights, which is of similar market potential at a similar stage in its product life, taking into account, without limitation, issues of safety and efficacy, product profile, competitiveness of the marketplace, the proprietary position of the product, the regulatory environment and status of the product and other relevant scientific factors.

22.      Despite this language, AngioDynamics acted unreasonably by effectively "shelving" the products and technology it purchased under the Agreement, which caused significant damages to

Plaintiffs.  In general, AngioDynamics failed to continue sufficient engineering and manufacturing development for subsequent FDA product milestone submissions, provide adequate and comparable sales training for the RadiaDyne technology and products, failed to introduce products into the marketplace, and failed to implement adequate marketing and sales strategies to drive business and achieve the milestones.  On information and belief, specific acts and/or omissions by AngioDynamics after the acquisition include, but are not limited to, the following:

- AngioDynamics did not utilize a sales team solely dedicated to RadiaDyne products, as done for separate products and technologies acquired from third parties.  Further, sales quotas for RadiaDyne products were lower compared to separate products.

- AngioDynamics purportedly removed the RadiaDyne product lines from their outside oncology clinical sales team and moved to an inside sales customer service team. RadiaDyne products were not sold directly through AngioDynamics sales representatives face-to-face in a clinical setting, pursuant to industry standards, and as done with technologies acquired from other third parties.

- AngioDynamics did not create sufficient nor adequate new marketing materials for the RadiaDyne products after the acquisition.

- AngioDynamics significantly reduced employee training from RadiaDyne's pre-transaction training protocols, and did not introduce new clinical training sites for physician customers.  Additionally, certain RadiaDyne products and technologies – namely the OARtrac Radiation Dose Monitoring System – were removed from testing and clinical treatment facilities as a voluntary decision.

- AngioDynamics did not introduce new website materials or updates after the acquisition.  Moreover, RadiaDyne's interactive website was even inactive for a protracted amount of time after the acquisition.  Additionally, AngioDynamics generally failed to list and market the OARtrac technology on its own website. For example, as of July 23, 2020 and likely well before, there was no listing of the OARtrac technology on AngioDynamics' website.

- AngioDynamics did not develop an Advisory Board of leading Clinicians experienced with the RadiaDyne products as AngioDynamics has with technologies acquired from other third parties.

- AngioDynamics did not fund or facilitate new clinical studies to further validate the clinical benefits of the various RadiaDyne products as AngioDynamics has with technologies acquired from other third parties.

- AngioDynamics did not submit for FDA market clearance the remaining milestone products, and subsequently did not generate revenue towards the sales milestones from these products.

- AngioDynamics terminated key RadiaDyne engineering consultants who had the knowledge to develop milestone-related products, as well as the RadiaDyne employees possessing the product and clinical knowledge needed to market and sell the RadiaDyne products.

- Unlike separate products and technologies acquired by AngioDynamics from other third parties, AngioDynamics makes no mention of the RadiaDyne products as key strategic product strategies in recent quarterly reports.

- In AngioDynamics' May 31, 2020 Form 10-K report with the SEC, AngioDynamics disclosed several items reflecting it has acted unreasonably by shelving the products and technology. For example, AngioDynamics disclosed "one of the technical milestones would not be achieved," effectively indicating AngioDynamics has prematurely discontinued efforts with regard to this milestone. Additionally, AngioDynamics disclosed it is reducing the fair value of the contingent liability associated with the Sales Milestones, further evidencing its decision to forego its attempt to reach those milestones. Moreover, AngioDynamics did not even list OARtrac as an active product or technology being marketed or sold as of May 31, 2020.

23.     Individually and cumulatively, the above-referenced conduct reflects AngioDynamics' failure to advance the manufacturing process and testing, new product FDA submissions, training, marketing, and sales of the RadiaDyne products and technologies. In other words, AngioDynamics has unequivocally shown it has no interest in satisfying its obligations under the Agreement and the law. AngioDynamics has wholly failed to exercise commercially reasonable efforts or good faith to advance RadiaDyne's former products and technology, which has caused significant damages to Plaintiffs.

24.     Given AngioDynamics' conduct, amounting to breach(es) and/or repudiation of the Agreement, Plaintiffs now sue to recover all amounts recoverable under the Milestones. This includes $30 million associated with the Sales Milestone, and $4 million still owed on the Technical Milestone.

## CAUSES OF ACTION

### COUNT 1 - BREACH OF CONTRACT

25.     Plaintiffs repeat, incorporate, and re-allege each and every prior factual allegation as if fully set forth within this cause of action.

26.     The Agreement is a valid and enforceable contract among Plaintiffs and AngioDynamics.  Plaintiffs have fully performed all of their obligations under the Agreement.

27.     Under the Agreement, AngioDynamics was obligated to pay $5 million for the Indemnification Holdback Amount on or before March 21, 2020, but has failed and refused to pay $4,625,000 still owed for the Indemnification Holdback Amount.  The Agreement further required AngioDynamics to exercise good faith and commercially reasonably efforts to advance RadiaDyne's technology and products.  Instead of doing so, AngioDynamics shelved RadiaDyne's former products and technology.

28.     Accordingly, AngioDynamics breached and/or repudiated the Agreement and caused actual damages to Plaintiffs for which Plaintiffs now sue, including the full Indemnification Holdback Amount and payments under the Sales and Technical Milestones.  Plaintiffs hereby seek recovery and relief under the various applicable sections of the Agreement, including but not limited to Sections 2.5, 2.6, 11.3(a)(ii), and 11.9(b).

29.     AngioDynamics' breach and/or repudiation of the Agreement was without justification or excuse.

30.     All conditions precedent to Plaintiffs' right to recover under the Agreement have been performed, satisfied, waived, or excused.

### COUNT 2 – IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31.     Plaintiffs repeat, incorporate, and re-allege each and every prior factual allegation as if fully set forth within this cause of action.

32.     As it pertains to the Milestones, namely the Sales Milestone, AngioDynamics is bound by the implied covenant of good faith and fair dealing.

33.     AngioDynamics was precluded from acting arbitrarily or unreasonably to deprive Plaintiffs of benefits to the Agreement.  AngioDynamics' conduct and/or omissions frustrated the overarching purpose of the Milestones in the Agreement, resulting in a breach of the implied covenant of good faith and fair dealing AngioDynamics owed to Plaintiffs.

34.     As a direct and proximate result of AngioDynamics' conduct, Plaintiffs suffered actual damages, for which Plaintiffs now sue, including payments under the Sales Milestone that would have been made if AngioDynamics did not act arbitrarily or unreasonably.

<u>REQUEST FOR ATTORNEYS' FEES AND "LOSSES"</u>

35.     Plaintiffs seek any and all relief available under the applicable law, including but not limited to the recovery of their reasonable attorneys' fees and costs incurred.  In addition, Plaintiffs seek and may recover their reasonable attorneys' fees and costs incurred in this suit as provided under the Agreement.  Plaintiffs further seek and may recover all "Losses" defined in Section11.1(c) of the Agreement and as available under Section 11.3(a)(ii), including damages, losses, interest, and reasonable fees charged by attorneys, accountants, and experts.

<u>PRAYER</u>

36.     Plaintiffs request that upon on final trial, the Court enter a final judgment in favor of Plaintiffs against AngioDynamics for the following relief:

a.      An award of all damages sustained by Plaintiffs as a result of AngioDynamics' breach of contract, including but not limited to the "Losses" as defined in the Agreement;

b.      An award of all damages sustained by Plaintiffs as a result of AngioDynamics' breach of the implied covenant of good faith and fair dealing;

c.      An award of all prejudgment and post-judgment interest at the maximum allowable rate under applicable law;

<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>                                          **Page 10**

d.      All costs of court incurred by Plaintiffs to recover the amounts owed by AngioDynamics, as allowed by contract, statute, and/or common law;

e.      All reasonable and necessary attorneys' fees incurred by Plaintiffs to recover the amounts owed by AngioDynamics, as allowed by the Agreement, statute, and/or common law; and

f.      Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

By: _/s/ J.J. Hardig, Jr._
     J.J. Hardig, Jr.
     Texas Bar No. 24010090
     S.D. Tex. Bar No. 28907
     jhardig@grayreed.com
     GRAY REED & MCGRAW LLP
     1300 Post Oak Blvd., Suite 2000
     Houston, Texas 77056
     (713) 986-7000 (Phone)
     (713) 986-7100 (Fax)
     **ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

OF COUNSEL:

James J. Ormiston
Texas Bar No. 15307500
S.D. Tex. Bar No. 9151
jormiston@grayreed.com
Tyler J. McGuire
Texas Bar No. 24098080
S.D. Tex. Bar No. 2851455
tmcguire@grayreed.com
GRAY REED & MCGRAW LLP
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000 (Phone)
(713) 986-7100 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of this document is being served on all parties via the Court's CM/ECF system, mail, and/or electronic means, in accordance with Federal Rule of Civil Procedure 5(b) and Local Rule 5.3, on this 14th day of September, 2020.

<u>/s/ J.J. Hardig, Jr.</u>
J.J. Hardig, Jr.
